## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

_____
)
Noman NAGI ALSOMAIRI,                                )
)
               Petitioner   )          Case No: 18-cv-7000
v.                                                                     )
)          **EMERGENCY STAY**
Jason DAWSON, in his official capacity as          )
Officer for Immigration and Customs Enforcement;   )
Jefferson B. SESSIONS III, in his official capacity as   )
the Attorney General of the United States;          )
Kirstjen NIELSEN in her official capacity as       )
Secretary of Homeland Security;                      )
Thomas DECKER, in his official capacity as          )
New York Field Office Director for                   )
U.S. Immigration and Customs Enforcement;           )
U.S. DEPARTMENT OF HOMELAND SECURITY               )
)
)
)
               Respondents.   )
_____)


## MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S REQUEST TO GRANT A STAY OF THE RULING TO CHANGE VENUE AND REQUEST TO LEAVE IN PLACE THE ORDER ENJOINING RESPONDENTS FROM TRANSFERRING PETITIONER FROM THE NEW YORK AREA AND THE NEW YORK FIELD OFFICE OF THE OFFICE OF ENFORCEMENT AND REMOVAL OPERATIONS PENDING APPEAL


JULIE GOLDBERG, ESQ.
GOLDBERG AND ASSOCIATES
5586 Broadway
Third Floor
Bronx, New York 10463
Tel: (718) 432-1022
Fax: (718) 432-1044
Email: uscis@goldbergimmigration.com
*Attorney for Petitioner*

## **TABLE OF CONTENTS**

INTRODUCTION...........................................................................................................................1

ARGUMENT..................................................................................................................................2

I.      THERE IS STRONG AUTHORITY THAT THIS COURT INCORRECTLY FOUND THAT THE RULING IN *RUMSFELD V. PADILLA* WAS CONTROLLING IN AN IMMIGRATION DETENTION CASE…………………....................................3

II.     THE DEFENDANTS MISREPRESENTED THEIR CONTRACTUAL AGREEMENT WITH HUDSON COUNTY, AS THE HUDSON FACILITY PROVIDES "HOUSING" NOT CUSTODY……………....................5

      A.     Intergovernmental Service Agreements Between Immigration Custom and Enforcement and Local and County Jails Show that the Housing Facilities Can Never Contractually Release a Detainee Without EXPRESS Authorization from ICE..................................................................6

      B.     Other Evidence Supports that ICE Retains Ultimate Control, Power, and Thus Legal Custody and Immediate Custody, Of Detainees Housed in Local And County Jails.............................................8

III.    THE COURT INCORRECTLY DETERMINED THAT THE WARDEN OF HUDSON FACILITY WAS THE IMMEDIATE CUSTODIAN OF THE PETITIONER...............................................................................11

IV.    THE COURT SHOULD HAVE FOUND THAT IMMIGRATION CASES WITH PENDING RELIEF MIXED WITH OTHER CLAIMS, ARE NON-CORE HABEAS CASES, NOT CORE HABEAS CASES...................................................................................11

V.     THE PETITIONER HAS A STRONG BASIS FOR APPEAL SINCE NOT ONLY ARE JUDGES IN THIS SDNY COURT DIVIDED ON THE ISSUE OF WHO THE "IMMEDIATE CUSTODIAN" IN THE IMMIGRATION CONTEXT, BUT THE SECOND CIRCUIT HAS YET TO RULE ON THIS MATTER AND MANY OF THE OTHER CIRCUITS ARE ALSO DIVIDED........................................................13

      A.     There is a Split in Both this Circuit and Among the Other Circuit Courts....................................................................14

      B.     Petitioner Will Suffer Irreparable Harm if a

Stay is not granted as he is eminently being removed.................................13

C.      Defendants Will Not Suffer any Hardship if the
        Decision To Change Venue is Stayed Pending Appeal
        and the Stay of Removal Remains in Place................................................14

VI.    THE COURT SHOULD HAVE WAITED THE 7 DAY WAITING
       PERIOD BEFORE CHANGING VENUE IN COMPLIANCE
       WITH THE LOCAL RULES.................................................................................15

VII.   THE COURT MAY ISSUE STAY OF ITS DECISION TO CHANGE
       VENUE AND KEEP THE PREVIOUS RESTRAINING ORDER IN
       PLACE PENDING APPEAL DESPITE RULING OTHERWISE........................15

CONCLUSION.................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Am. Beverage Ass'n v. City & Cty. of S.F.*,
2016 WL 9184999 (N.D. Cal. Jun. 7, 2016)..............................................................2
*Armentero* v. *INS*, 340 F. 3d 1058 (CA9 2003) ......................................................4
*Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 489 (1973)............................4
*Calderon v. Sessions,* 2018 WL 3677891, at *9 (S.D.N.Y. Aug. 1, 2018)…………………….10
*Christian Louboutin S.A. v. Yves Saint Laurent America Holding, Inc.*,
696 F.3d 206 (2d Cir. 2012).……………………………………………………………………2
*Cooper v. Town of East Hampton,* 83 F.3d 31, 36 (2d Cir.1996)...................................2
*Cnty. of Nassau, N.Y. v. Leavitt*, 524 F.3d 408 (2d Cir. 2008)…………………………………2
*Farez-Espinoza v. Chertoff*, 600 F. Supp. 2d 488 (S.D.N.Y. 2009)……………………….12
*Fequiere v. Tribeca Lending*, 2015 WL 1412580 (E.D.N.Y. March 20, 2015)…………………..2
*Henderson* v. *INS*, 157 F. 3d 106 (1998) ...........................................................4
*Hilton v. Braunskill,* 481 U.S. 770 (1987)..........................................................2
*N. Mariana Islands v. Millard*, 287 F.R.D. 204 (S.D.N.Y. 2012) ...............................14
*Peyton v. Rowe,* 391 U.S. 54 (1968)...............................................................4
*Protect Our Water v. Flowers*, 377 F. Supp. 2d 882 (E.D. Cal. 2004)...........................14
*Robledo-Gonzales* v. *Ashcroft*, 342 F. 3d 667 (CA7 2003) ...................................4
*Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)…………............2
*Roman v. Ashcroft,* 340 F.3d 314 (2003)...........................................................4, 9
*Rumsfeld v. Padilla,* 542 U.S. 426 (2004)..........................................3, 4, 5, 6, 12
*Soravia v. Sessions,* 280 F. Supp. 3d 1168, (N.D. Cal., 2017)…………………………….13
*Vasquez* v. *Reno*, 233 F. 3d 688 (CA1 2000) ...................................................4
*Wales v. Whitney,*114 U. S. 564 (1885)...........................................................5
*Wash. Metro Area Transit Comm'n,* 559 F.2d 841(U.S. App D.C. 1977)...................14
*Yi* v. *Maugans*, 24 F. 3d 500 (CA3 1994) .......................................................4
*Zabadi v. Chertoff,* 2005 WL 1514122 (N.D. Cal.).............................................4, 5

### STATUES

28 U.S.C. §1231(h) ...................................................................................14
8 U. S. C. §2242 .....................................................................................2
28 U. S. C. §2243.....................................................................................2
Federal Rule of Civil Procedure 62(c) ..........................................................2, 14
Local Civil Rule 83.1................................................................................13, 14
INA§ 244(a).………………………………………………………………………………12
INA § 244(b) .……………………………………………………………………………12
INA§ 244(a)(1)(A).………………………………………………………………………12

### EVIDENCE

Exhibit A: Agenda, Board of Chosen Freeholders County of Hudson (July 12, 2018), p. 7,
http://www.hudsoncountynj.org/wp-content/uploads/2018/01/07-12-2018-Regular-Agenda.pdf.................................................................................................................5

Exhibit B: Allegany County Intergovernmental Services Agreement with Immigration and Customs Enforcement, Agreement Number DROIGSA-07-0021 (August 2007)
https://www.ice.gov/doclib/foia/isa/r_droigsa070021alleganycountyny.pdf............................6, 7

Exhibit C: Custody Management Division,
https://www.ice.gov/custody-management...............................................................9

Exhibit D: Hudson County Intergovernmental Services Agreement with Immigration and Customs Enforcement, Agreement Number ACB.5.I-OOOI (April 5, 1996),
https://www.ice.gov/doclib/foia/isa/igsacountyofhudson.pdf...........................................4, 5, 6, 11

Exhibit E: ICE ERO Webpage
https://www.ice.gov/contact/detention-information-line................................................10

Exhibit F: 2008 ICE/DRO DETENTION STANDARD
https://www.ice.gov/doclib/dro/detention-standards/doc/transfer_of_detainees.doc...................................................9

Exhibit G: 2008 ICE Webpage for Detention Management (now deleted)
https://web.archive.org/web/20090114021703/http://www.ice.gov/pi/news/factsheets/detention_mgmt.htm..............................................................10

Exhibit H: OIG Report: ICE's Inspections and Monitoring of Detention Facilities Do Not Lead to Sustained Compliance or Systemic Improvements (June 26, 2018),
https://www.oig.dhs.gov/sites/default/files/assets/2018-06/OIG-18-67-Jun18.pdf.......................6

## INTRODUCTION

Noman NAGI ALSOMAIRI, ("Petitioner") appreciates the Court's promptness in ruling on both the Motion to change venue and the temporary stay of removal by issuing a decision in an expedited manner. Petitioner respectfully requests that this Honorable Court leave in place the August 3, 2018 temporary restraining order that enjoined Respondents from transferring Petitioner from the New York City area and/or from the jurisdiction of the New York Field Office of the Office of Enforcement and Removal Operations. (Docket No. 5) until: (1) the Petitioner can either get an order from the Second Circuit, or (2) this Court holds a preliminary injunction hearing, on the temporary restraining order that can be kept in place pending appeal.

Here, Petitioner faces irreparable harm absent the leaving in place the temporary restraining order issued August 3, 2018 (Docket No. 5), and he is likely to succeed on the merits, or at the very least, raise sufficiently serious questions going to the merits, as illustrated by the evidence attached as exhibits and referenced herein that show that Defendants, and not the Hudson County Correctional Facility ("Hudson Facility"), exercise both legal custody and immediate custody of Petitioner. Further, as acknowledged by this Court, the fact that judges are divided on the issue of "immediate custodian" in the immigration context in the District Court for the Southern District of New York, and that the Second Circuit has yet to rule on this matter, and that many other circuits courts are also divided, strongly supports finding there are sufficiently serious questions going to the merits to make a fair ground for litigation. Thus, the leaving in place of the temporary restraining order is justified.

Finally, public interest lies in giving ample due process to a law-abiding father to two U.S. citizen children, and husband to a U.S. citizen wife, especially when Petitioner has no criminal history, faces continued detention away from his family and faces imminent removal to a country

where he has a credible fear of persecution and to wit has filed for asylum. In fact, Petitioner has an approved Form I-130, Petition for Alien Relative, a pending Form I-485, Application to Register Permanent Residence or Adjust Status, a pending application for Temporary Protected Status, and has requested a credible fear hearing regarding returning to Yemen. (Docket No. 1, ¶ 2, 6-8)

## ARGUMENT

"In order to gain entry of a temporary restraining order in [the Second Circuit], a party must demonstrate: (1) irreparable harm in the absence of the injunction; and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation; and (3) a balance of hardships tipping decidedly in the movant's favor. *Cnty. of Nassau, N.Y. v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008); see also *Christian Louboutin S.A. v. Yves Saint Laurent America Holding, Inc.*, 696 F.3d 206, 215 (2d Cir. 2012); *Fequiere v. Tribeca Lending*, 2015 WL 1412580, at * 2 (E.D.N.Y. March 20, 2015). Further, a temporary restraining order is justified due to the of irreparable harm of deportation, and the likelihood of Petitioners success on the merits, or at the very least, sufficiently serious questions going to the merits to make them  a fair ground for litigation, and the balance of hardships, including Petitioner's hardship of deportation, tipping decidedly in the Petitioner's favor.

To determine whether a stay of an order pending appeal is appropriate, a court must evaluate the following factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999)(citing *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987); *See Cooper v.*

*Town of East Hampton,* 83 F.3d 31, 36 (2d Cir.1996).  Under Federal Rule of Civil Procedure 62(c), this Court has the authority to grant a stay of its decision and to leave in place the stay of removal. Courts have granted stays pending appeal after initially denying the movant's motion for a preliminary injunction. *See Am. Beverage Ass'n v. City & Cty. of S.F.*, No. 15-cv-3415, 2016 WL 9184999, at *2 (N.D. Cal. Jun. 7, 2016)(granting injunction pending appeal despite denying preliminary relief and noting: "the success on the merits factor cannot be rigidly applied, because if it were, an injunction [pending appeal] would seldom, if ever, be granted because the district court would have to conclude that it was probably incorrect in its determination on the merits")(internal quotation marks omitted).

### I.      THERE IS STRONG AUTHORITY THAT THIS COURT INCORRECTLY FOUND THAT THE RULING IN *RUMSFELD V. PADILLA* WAS CONTROLLING IN AN IMMIGRATION DETENTION CASE.

"The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is "the person who has custody over [the petitioner]." 28 U. S. C. §2242; see also §2243. "The writ, or order to show cause shall be directed to the person having custody of the person detained." *Rumsfeld v. Padilla* 542 U.S. 426, 427 (2004). Padilla, a U.S. citizen, was detained in federal criminal custody after federal agents apprehended him while executing a material witness warrant in connection with its grand jury investigation into the September 11, 2001 Al Qaeda terrorist attacks. While the motion to vacate the warrant was pending, the President of the United States issued an order to Secretary of Defense Rumsfeld, designating Padilla as an "enemy combatant" and directing that he be detained in military custody. See *Padilla*, at 426. While defining custody, the *Padilla* court limited its interpretation by specifying that "[t]hese provisions contemplate a proceeding against some person who has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge." *Id*.at

435.(emphasis in original)  The *Padilla* court found that "[t]he default rule is that the proper respondent is the warden of the facility where the prisoner is being held," but "left open" the issue of proper respondent when a habeas petition is filed by an alien detained pending deportation. *Padilla*, at 427. The Supreme Court found that in Padilla's extremely unique case, no exceptions to the default rule applied, and that the commander of the military confinement facility was the only proper custodial official for habeas purposes.[1]

However, in *Zabadi v. Chertoff,* 2005 WL 1514122, (N.D.Cal.), the court determined that since "the district director has full authority to direct the local warden to release petitioner," it was not necessary for the detainee to name the warden of the Santa Clara County Jail in his habeas petition.

In *Braden v. 30th Judicial Circuit Court of Kentucky* the Supreme Court affirmed its decision in *Peyton v. Rowe,* 391 U.S. 54 (1968) discarding the doctrine that "permitted a prisoner to attack on habeas corpus only his current confinement…" *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 489 (1973), In *Braden*, the warden of an Alabama prison in which

---

[1] See *Padilla*, at 440. (Padilla's argument reduces to a request for a new exception to the immediate custodian rule based up on the "unique facts" of this case. While Padilla's detention is undeniably unique in many respects, it is at bottom a simple challenge to physical custody imposed by the *Executive* -the traditional core of the Great Writ (emphasis added). Furthermore, the Court in *Padilla* explicitly indicated that the Court was "declin[ing] to resolve"…"the open…question [as to] whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deportation [left open in *Ahrens* v. *Clark*, 335 U. S. 188 (1948]." *Padilla*, at fn8. ("The lower courts have divided on this question, with the majority applying the immediate custodian rule and holding that the Attorney General is not a proper respondent. Compare *Robledo-Gonzales* v. *Ashcroft*, 342 F. 3d 667 (CA7 2003) (Attorney General is not proper respondent); *Roman* v. *Ashcroft*, 340 F. 3d 314 (CA6 2003) (same); *Vasquez* v. *Reno*, 233 F. 3d 688 (CA1 2000) (same); *Yi* v. *Maugans*, 24 F. 3d 500 (CA3 1994) (same), with *Armentero* v. *INS*, 340 F. 3d 1058 (CA9 2003) (Attorney General is proper respondent). The Second Circuit discussed the question at some length, but ultimately reserved judgment in *Henderson* v. *INS*, 157 F. 3d 106 (1998)." *Id*.

petitioner was serving sentence was agent of Kentucky in holding prisoner pursuant to Kentucky detainer; thus petitioner was 'in custody' for purposes of federal habeas corpus statute." *Id.*

Here, Petitioner is not at all like Padilla, primarily on account that he is not being held in custody at a military base at the instruction of the President, but he is being housed by the Hudson Facility. Further, here, like in *Zabadi* and *Braden*, the Hudson Facility does not have the "power to produce the body of" Petitioner before this Honorable Court, because as explained below, Defendants have retained that power in its own contractual agreement with the Hudson Facility to house the Petitioner. (See Ex. D). Further, the Court incorrectly finding that *Padilla* was controlling in an immigration detention case is a sufficiently serious question going to the merits, supporting the issuance of a temporary restraining order.

## II.   THE DEFENDANTS MISREPRESENTED THEIR CONTRACTUAL AGREEMENT WITH HUDSON COUNTY, AS THE HUDSON FACILITY PROVIDES "HOUSING" NOT CUSTODY.

The renewal of the Intergovernmental Service Agreement between Hudson County and ICE ("Hudson IGSA") was just finalized on July 12, 2018,  with the Hudson County Board of Chosen Freeholders voting to approve an agreement characterized as providing not custody, but "housing" ONLY:

> "(CARRIED) - Corrections - Resolution authorizing an Intergovernmental Services Agreement with Immigration and Customs Enforcement (I.C.E.) for the *housing of Federal Prisoners* at the Hudson County Correctional and Rehabilitation Center." (See Ex. A)(Emphasis added.)

Further, housing is an appropriate characterization of the thrust of the Hudson IGSA, because from its plain language, "Covered Services" does not include the Constitutional duties of custody, which include producing the person pursuant to a writ of habeas corpus. (See Ex. D, § II).

5

A. **INTERGOVERNMENTAL SERVICE AGREEMENTS BETWEEN IMMIGRATION CUSTOM AND ENFORCEMENT AND LOCAL AND COUNTY JAILS SHOW THAT THE HOUSING FACILITIES CAN NEVER CONTRACTUALLY RELEASE A DETAINEE WITHOUT EXPRESS AUTHORIZATION FROM ICE.**

"The writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Wales v. Whitney*, 114 U.S. 564, 574 (1885). *Wales v. Whitney*,114 U. S. 564, 574 (1885).  In fact,  the Supreme Court cited that case in *Rumsfeld*, when explaining just who the custodian was:

> This custodian, moreover, is "the person" with the ability to produce the prisoner's body before the habeas court. *Ibid*. We summed up the plain language of the habeas statute over 100 years ago in this way: "[T]hese provisions contemplate a proceeding against some person who has the *immediate custody* of the party detained, **with the power to produce the body of such party before the court or judge**, that he may be liberated if no sufficient reason is shown to the contrary." *Padilla,*  542 U.S. 426, 435, (2004) (citing *Wales*, at 574)(italics emphasis in original; bold emphasis added).

Here, "the power to produce the body," is not with local and county jails, but retained by ICE explicitly through provisions in signed agreements between ICE and local and county jails across the nation. For background,  ICE houses an average daily population of 35,435 detainees in its custody in 211 facilities nationwide. An average daily population of 8,778 of those detainees in ICE custody are housed in 87 local and county jails across the country. Each facility has its own agreement with ICE, which may either be an Intergovernmental Service Agreement ("IGSA") or a U.S. Marshals Service Intergovernmental Agreement ("IGA"). (See Ex. H, at p. 1) Those IGSAs, including the IGSA for the Hudson Facility,  provide that only ICE, and not the local facility, has the power to produce the body of a detainee. For that matter, local facilities maintain very little control over detainees that does not involve ICE's prior authorization, including proving of medical treatment, specialized meals and even face to face attorney visits. (See Ex. B, D)

Specifically, the Hudson IGSA provides that "The Contractor agrees to...discharge INS detainee(s) only from and to properly identified INS officer(s) and, with prior authorization from the designated INS point(s) of contact, to other properly identified Federal law enforcement officials." (See Ex. D, § IV, ¶ 1, p. 2)[2] Another provision reads: "INS detainee(s) shall not be released from the facility into the custody of other Federal, state or local officials *for any reason*, except for medical or emergency situations, without the express authorization of INS." See Ex. D, § IV, ¶ 2, p. 2-3). Yet another provision reads: "The Contractor further agrees to notify the INS as soon as possible of emergency medical cases requiring removal of detainee(s) from its facility (or facilities). Prior authorization will be obtained from INS when removal is required for any other medical services that may be required at local clinics or hospitals." See Ex. D, § III, ¶ 2, (p. 2)). Nowhere in the agreement does ICE give Hudson the authority, or establish/extend custodial rights, to even produce a detainee in ICE custody pursuant to a habeas corpus petition by this or any Court. See Ex. D).

In another example, the IGSA between Allegany County and ICE for the Allegany County Jail ("Allegany') in Belmont, New York does not indicate that Allegany has legal custody or immediate custody of ICE detainees. Elsewhere, the Allegany IGSA specifically states: "If an ICE detainee is sought for federal, state or local proceedings, only ICE may authorize release of the detainee for such purposes. The Service Provider shall contact the ICE Contracting Officer and the ICE COTR immediately regarding such requests." (Ex. B, § IV, ¶ C (p.4)).

Further, ICE indemnifies Allegany "against any and all liability claims and costs of whatever kind and nature, for injury to or death of any person(s)...which occurs in connection with

---

[2] Pursuant to the Homeland Security Act of 2002, Pub. L. 1007-296, 116 Stat. 2135 (Nov. 25, 2002), Homeland Security performs functions performed by INS.

or is incident to performance of work under the terms of this Agreement, and which results from negligent acts or omissions of ICE officers or employees...." See Ex. B, § XIV, ¶ A (p. 9)).The IGSA provides that "[i]n the event a detainee files suit...contesting the legality of the detainee's incarceration and/or immigration/citizenship status, ICE shall request that the U.S. Attorney's Office, as appropriate, move either to have [Allegany] dismissed from such suit, to have ICE substituted as the proper party defendant; or to have the case removed to a court of proper jurisdiction. Regardless of the decision on any such motion, ICE shall request that the U.S. Attorney's Office be responsible for the defense of any suit on these grounds." See Ex. B, § XIV, ¶ C (p. 10)). Simply, ICE assumes all liability because the detainees are still in ICE custody while they are being housed at Allegany. Further, given that Defendants have a contractual provision asserting their duty to always have ICE named as "the "proper party defendant," it follows that ICE is the proper, legal and the immediate custodian for the purposes at hand.

In yet another example, the IGSA between Bergen County and ICE for the Bergen County Annex and Jail ("Bergen Jail"), in Hackensack, NJ ("Bergen IGSA"), explicitly spells out that "[t]he Local Government agrees to provide one hundred fifty (150) bedspaces for federal detainees in INS custody…" See Ex.: Bergen IGSA, § V). The Bergen IGSA does not require bedspaces for the federal detainees transferred for housing at Bergen Jail, because those detainees are merely housed by Bergen Jail, and remain in ICE custody.

**B. OTHER EVIDENCE SUPPORTS THAT ICE RETAINS ULTIMATE CONTROL, POWER, AND THUS LEGAL CUSTODY AND IMMEDIATE CUSTODY, OF DETAINEES HOUSED IN LOCAL AND COUNTY JAILS.**

"The wardens of all these facilities act pursuant to INS Detention Standards and are considered agents of the INS District Director in their district. It is clear that INS does not vest power over detained aliens in the wardens of detention facilities because the INS relies on state

and local governments to house federal INS detainees. Whatever daily control state and local governments have over federal INS detainees, they have that control solely pursuant to the direction of the INS." *Roman v. Ashcroft,* 340 F.3d 314, 320 (2003). In *Roman,* the Third Circuit remanded a case to the District Court to determine whether "the Cleveland District Director or the INS Commissioner was the proper respondent for a lawful permanent resident who was ordered removed to the Dominican Republic." *Id*. at 329. The Sixth Circuit found that, "As the heads of the basic operating units of the INS, district directors oversee the confinements of aliens at all three kinds of INS detention facilities. Service processing centers, contract detention facilities, and state or local government facilities used by INS through...[IGSAs], to hold detainees for more than 72 hours. The wardens of all these facilities act pursuant to INS detention standards and are considered agents of the INS district director in their district. It is clear that the INS does not vest power over detained aliens in the warden of detention facilities because the INS relies on state and local governments to house federal INS detainees. Whatever daily control state and local governments have over federal INS detainees, they have that control solely pursuant to the direction of the INS. Therefore, the INS district director for New Orleans is [petitioner's] immediate custodian for habeas corpus purposes," *Id*. at pages 320 to 321.

Overwhelming evidence demonstrates that ICE possesses ultimate and complete control of both legal custody and immediate custody of detainees housed in local and county jails. For example, ICE has a division within Enforcement and Removal Operations called "Custody Management Division" that in its own words, "Provides...oversight for the administrative custody of one of the most highly transient and diverse populations of any detention system in the world." (Ex. C). Further, ICE contracts with The Nakamoto, Inc., a private company, and its own Office of Detention Oversight to  oversee virtually every detail of ICE's custody of its detainees housed

in local and county jails. (Exhibit: H) Simply, local and county jails provide housing to ICE detainees, but do not have lawful custody of ICE detainees.

As recently as 2008 and still on ICE's website, the "Detention Standard" as to the "Transfer of Detainees" required that "IGSAs must conform to these procedures or adopt, adapt or establish alternatives, provided they meet or exceed the intent represented by these procedures."(Ex. F, at 1) The Detention Standard is quite clear that local and county jails have no authority as to when to remove or release a detainee from a facility for any reason:

> A detainee may not be removed from any facility, including Field Office detention areas, without a Form G-391 that authorizes the detail.
> - The G-391 must be properly signed and shall clearly indicate the name of the detainee(s), the place or places to be escorted, the purpose of the trip and other information necessary to efficiently carry out the detail.
> - IGSA facilities may use a local form as long as the form provides the required information. (Exhibit: F, at 9)

Further, other ICE literature refers to detainees housed at local and county jails as in "ICE custody." For example, the webpage for the "ICE ERO Detention Reporting and Information Line" says that "ERO is committed to transparency, collaboration and resolving concerns with our stakeholders...[which] include *individuals in ICE custody*, the public, non-governmental organizations, faith-based organizations, academic institutions, attorneys, and advocacy groups." (See Ex. E)(emphasis added). The webpage does not list detainees in local or county jail custody as a stakeholder, for a reason. Those detainees are in ICE custody.

Finally, as ICE first began ramping up IGSAs with local and county jails, an ICE webpage set up for Detention Management boasted: "[a] national detainee handbook has been created to ensure all detainees receive the same information regarding their rights, responsibilities and a full accounting of the services they will be provided *while detained in ICE custody*." (See Ex. G)(emphasis added). This webpage is one example of many where ICE purposefully represents

to the general public, and all stakeholders that ICE detainees housed in local and county jails remain in ICE custody.

In conclusion, ICE's control over detainees, and often as shown above, its own admissions that detainees housed in local and county jails are in ICE custody, both support a finding that ICE holds not only legal custody of Petitioner, but immediate custody as well, regardless of where they are housed.

### III.   THE COURT INCORRECTLY DETERMINED THAT THE WARDEN OF HUDSON FACILITY WAS THE IMMEDIATE CUSTODIAN OF THE PETITIONER.

The Court concluded erroneously that the Hudson IGSA "merely demonstrates that federal officials have 'legal control,' over petitioner, not that a federal official is the, 'immediate custodian,' of petitioner." (Transcript, p. 29) However, the Court came to that conclusion prior to reviewing the Hudson IGSA, which the Court will find as an exhibit to this Memorandum. (See: Ex. D) Given that the actual Hudson IGSA retains, as explained below, ICE's ultimate authority over whether a detainee is transferred from Hudson, e.g. the power to produce the body, ICE is the legal custodian and the immediate custodian of the Petitioner. Thus, as ICE is Petitioner's immediate custodian, transfer to the District of New Jersey is not proper. Further, the Court incorrectly determining that the Warden of Hudson Facility was the Petitioner's immediate custodian is a sufficiently serious question going to the merits, supporting the issuance of a temporary restraining order.

### IV.   THE COURT SHOULD HAVE FOUND THAT IMMIGRATION CASES WITH PENDING RELIEF MIXED WITH OTHER CLAIMS, ARE NON-CORE HABEAS CASES, NOT CORE HABEAS CASES.

Many cases have determined that where there is relief still pending in some form of or another, whether it's adjustment of status, whether it's TPS, whether it's an I-130, or an I-601A,

the case becomes a non-core habeas petition, which would give this Court jurisdiction. See: *Calderon v. Sessions*, 2018 WL 3677891, at *9 (S.D.N.Y. Aug. 1, 2018)("Specifically, the Court order[ed] Respondents to stay removal of Petitioner until the occurrence of one of the following events: (1) Denial of Petition for Alien Relative on his behalf ("Form I-130"); (2) Denial of his Application for Permission to Reapply for Admission ("Form I-212"); (3) Denial of his Application for Provisional Unlawful Presence Waiver ("Form I-601A"); *or* (4) Approval of Forms I-130, I-212, *and* I-601A."(emphasis in original)).

Yet here, this Honorable Court incorrectly determined that "the petitioner before me is a core habeas petition," leading it to find that "jurisdiction only lies in the district of New Jersey where the Hudson Facility is located."(Transcript, p. 31). Because the main thrust of the petition for writ of habeas corpus is an emergency stay of removal pending relief, Petitioner's case is a non-core habeas case. Petitioner's detention, and challenge thereof, are merely ancillary matters.

In *Farez-Espinoza* v. Chertoff, 600 F. Supp. 2d 488 (S.D.N.Y. 2009), the court determined that "immediate custodian" rule should not be applied to immigration cases where petitioners challenge their detention under the immigration laws. *Farez-Espinoza* also relied on four other district court cases synonymous to the Petitioner here (also finding non-core habeas) to conclude that the "Attorney General is a proper respondent in immigration cases where the petitioner challenges her detention under the immigration laws." *Id*. at 494-95. All four cases, however, were "non-core" habeas petitions in which the petitioner sought either a stay of deportation or an adjustment of status. Given that Petitioner here brings claims to stay the deportation, adjustment of status and challenges his detention under - *INA§ 244(a)* and *INA § 244(b)* (an alien who is the national of a foreign state designated by the Attorney General as containing extraordinary and temporary conditions that prevent aliens who are nationals of the state from returning to the state

in safety, may be granted temporary protected status in the United States.) As well as *INA§ 244(a)(1)(A)*, which states "The Attorney General shall not remove the alien from the United States during the period in which such status is in effect." Moreover, section 244 goes on to say, while an application for TPS is pending**,** an applicant who establishes "prima facie eligibility" for TPS is entitled to "temporary treatment benefits," including a "temporary stay of deportation" and "temporary employment authorization. It is under this statute that Petitioner challenges both his removal and detention. Therefore, this case supports the broader conclusion drawn by the court in *Farez-Espinoza*.

## V.   THE PETITIONER HAS A STRONG BASIS FOR APPEAL SINCE NOT ONLY ARE JUDGES IN THIS SDNY COURT DIVIDED ON THE ISSUE OF "IMMEDIATE CUSTODIAN" IN THE IMMIGRATION CONTEXT, BUT THE SECOND CIRCUIT HAS YET TO RULE ON THIS MATTER AND MANY OF THE OTHER CIRCUITS ARE ALSO DIVIDED.

### A. THERE IS A SPLIT IN BOTH THIS CIRCUIT AND AMONG THE OTHER CIRCUIT COURTS.

As this Court acknowledged, "the majority of courts in this district and in this circuit" have applied the immediate custodian rule in cases where an alien is held pending deportation, citing *Calderon v. Sessions* 2018 WL 3677891 at *3, Southern District of New York, August 1, 2018. (Transcript, p. 22)

Many Circuit Courts, even after *Padilla*, have found that federal government officials and not the warden of the prison where an immigrant detainee is housed is the "immediate custodian." (See Footnote 1) For example, the Northern District of California has found that the federal field specialist for the office of refugee settlement is the "immediate custodian" for unaccompanied minors pending removal proceedings, citing *Soravia v. Sessions*, 280 F. Supp 3d 1168, 1186 to 87, (N.D. Cal., 2017).

### B. PETITIONER WILL SUFFER IRREPARABLE HARM IF A STAY IS NOT GRANTED AS HE IS EMINENTLY BEING REMOVED.

When the imminence of Petitioner's removal came up at the hearing before this Court on August 8, 2018, the Defendants' counsel conceded that removal had been scheduled for "next week, but that has been cancelled," and the best assurance he could offer was that "I was told from ICE that it would not happen next week." (Exhibit: Transcript). Next week is now this week, and so taking Defendant ICE at their word, Petitioner could be deported as soon as the pre-court hours of Monday, August 20, 2018. Further, cases that the Defendants relied upon and this Court used in support of its decision, including *Singh*, *Fortune*, and *Cesar*, did not even have a final order of removal. *Singh v. Holder*, 2012 WL 5878677, *1-2, (S.D.N.Y.  Nov. 21, 2012); *Fortune v. Lynch*, 2016 WL 1162332 at *1-2, (S.D.N.Y, Mar. 22, 2016), *Cesar v. Shanahan*, 2018 WL 1747989 at *1, (S.D.N.Y. Feb. 5, 2018).

Here, Petitioner has a July 1996 final order of removal, and if allowed to be deported, the Defendants will likely send him back to Yemen: a country he has not occupied in 24 years and currently is experiencing dangerous country conditions that were non-existent when he arrived in the United States. Moreover, Petitioner has requested to be interviewed by an asylum officer to determine whether he had a credible fear of returning to Yemen, but Defendant Department of Homeland Security unlawfully denied his request. (Petition for Writ of Habeas Corpus, Dkt. 1,¶ 2, 5, 8)

### C. DEFENDANTS WILL NOT SUFFER ANY HARDSHIP IF THE DECISION TO CHANGE VENUE IS STAYED PENDING APPEAL AND THE STAY OF REMOVAL REMAINS IN PLACE.

While Defendants inexplicably aspire to urgently Petitioner as soon as possible, they will experience no hardship in connection to staying the decision to change venue pending appeal or

keeping the stay of removal in place. Although Defendants draw the Court's attention to "an interest here in moving forward" (Transcript, p. 34), if anything, Petitioner's request would allow Defendants to shift their focus, attention, and resources to immigrants with criminal history, as Petitioner has none (Petition for Writ of Habeas Corpus, Dkt. 1,¶ 2), and avoid expenses spent pursuant to removing him.

### VI.   THE COURT SHOULD HAVE WAITED THE 7 DAY WAITING PERIOD BEFORE CHANGING VENUE IN COMPLIANCE WITH LOCAL RULES.

"In a case ordered transferred from this District, the Clerk, unless otherwise ordered, shall upon the expiration of seven (7) days effectuate the transfer of the case to the transferee court." Local Civil Rule 83.1. Further, the Committee Note that follows that local rule, while conceding it needs to be reworded, declares that  "the Committee believes that the seven-day waiting period in Local Civil Rule 83.1 should be retained, in order to allow the party opposing transfer the same opportunity as the current rule affords to seek rehearing or appellate review." *Id*.

Here, although the Court entertained discussion on the subject, ultimately, with Petitioner's counsel's objection, the Court decided to not apply Civil rule 83.1 to this case, granting Defendants' request. (Transcript, p37-38)("the court will transfer the case as soon as possible after three days have elapsed from today's order" and "the sooner the case gets to New Jersey, the better.") However, Defendants' counsel argued that 8 U.S.C. §1231(h) provided support for proposition that the Court lacked jurisdiction, when that Section is about statutory construction, and says nothing about the Court's jurisdiction. (Transcript, p. 33-34)

### VII.   THE COURT MAY ISSUE STAY OF ITS DECISION TO CHANGE VENUE AND KEEP THE PREVIOUS RESTRAINING ORDER IN PLACE DESPITE RULING OTHERWISE.

15

This Court may grant a stay of its' ruling to change venue and leave in place the order that enjoined respondents from transferring petitioner from the New York City area and enjoined the government from transferring petitioner from the jurisdiction of the New York Field Office of the Office of Enforcement and Removal pending appeal. *N. Mariana Islands v. Millard*, 287 F.R.D. 204, 215 (S.D.N.Y. 2012) (granting injunction pending appeal where party could "eventually have a fair chance of success on the merits"). *See also Protect Our Water v. Flowers*, 377 F. Supp. 2d 882, 884 (E.D. Cal. 2004)("Several courts have observed that the 'success on the merits factor cannot be rigidly applied,' because if it were, an injunction would seldom, if ever, be granted 'because the district court would have to conclude that it was probably incorrect in its determination on the merits.'" (quotation omitted)).

Accordingly, courts routinely grant Rule 62 relief "when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained." *Wash. Metro Area Transit Comm'n*, 559 F.2d 841, 844 (U.S. App D.C. 1977). Because the question of immediate custody is a difficult legal question and the status quo here would be not deporting the Petitioner, the relief of a stay of the Court's ruling is warranted here.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Honorable Court leave in place the August 3, 2018 temporary restraining order that enjoined Respondents from transferring Petitioner from the New York City area and/or from the jurisdiction of the New York Field Office of the Office of Enforcement and Removal Operations. (Docket No. 5) until: (1) the Petitioner can either get an order from the Second Circuit, or (2) this Court holds a preliminary injunction hearing, on the temporary restraining order that can be kept in place pending appeal.

Given the time urgencies, Petitioner respectfully requests that this Honorable Court rule on this

motion by Thursday, August 16, 2018 at 5:00 pm.


Dated: August 15, 2018                                   Respectfully submitted,



                                                        /s/ Julie Goldberg, Esq.
                                                        JULIE GOLDBERG, ESQ.
                                                        GOLDBERG AND ASSOCIATES
                                                        5586 Broadway
                                                        Third Floor
                                                        Bronx, New York 10463
                                                        Tel: (718) 432-1022
                                                        Fax: (718) 432-1044
                                                        Email: uscis@goldbergimmigration.com

## CERTIFICATE OF SERVICE

I, Julie Greenberg, an attorney admitted to practice in the State of California and the Managing Attorney of the firm of Greenberg and Associates, hereby certify that: On the 14th day of August 2018, I have caused service of the Notice of Motion, and the Memorandum of Law in Support of the Motion, and Exhibits, all dated August 15, 2018, to be made by electronic filing with the Clerk of the Court using the CM/ECF System, which will send a Notice of Electronic Filing to all parties with an e-mail address of record, who have appeared and consent to electronic service in this action. In addition, copies of the same documents were served by U.S. Postal Service Delivery upon counsel for Defendants as follows:

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
BRANDON M. WATERMAN
Assistant United States Attorney
86 Chambers Street / 3rd Floor
New York City, NY 10007

Dated: August 15, 2018                    Respectfully submitted,

/s/ Julie Goldberg, Esq.
JULIE GOLDBERG, ESQ.
GOLDBERG AND ASSOCIATES
5586 Broadway
Third Floor
Bronx, New York 10463
Tel: (718) 432-1022
Fax: (718) 432-1044
Email: uscis@goldbergimmigration.com